## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BAKARY CAMARA,

               Petitioner,

      v.

WARDEN, FCI-ALLENWOOD,

            Respondent.

No. 4:23-CV-00504

(Chief Judge Brann)

## MEMORANDUM OPINION

### JULY 31, 2023

Petitioner Bakary Camara, ("Camara"), an inmate confined in the Allenwood Medium Federal Correctional Institution, White Deer, Pennsylvania, files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] He requests the Court apply earned time credits to his sentence pursuant to the First Sep Act ("FSA"), even though he is not a minimum or low recidivism risk level.[2] For relief, Petitioner seeks the Court to "transfer him to supervised release."[3]

A response[4] and traverse[5] having been filed, the petition is ripe for disposition.

---

[1] Doc. 1.
[2] *Id*.
[3] *Id*.
[4] Doc. 11.
[5] Doc. 12.

For the reasons set forth below, the Court will deny the instant petition for writ of habeas corpus.

## I.    BACKGROUND

Camara is serving an aggregate seventy (70) month sentence imposed on October 16, 2019, by the United States District Court for the Eastern District of Pennsylvania, for offenses involving Identity Theft, Social Security Fraud, and Conspiracy to Produce Identification Documents Without Lawful Authority.[6]  His projected release date is March 13, 2024 via good conduct time release.[7]

On May 7, 2023, the Bureau of Prisons ("BOP") conducted Petitioner's FSA Time Credit Assessment.[8]  The BOP determined that Camara is eligible to earn and accrue FSA Time Credits, but he is not eligible to have the credits applied at this time due to his High PATTERN score.[9]

## II.    DISCUSSION

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System") within 210 days of December 21, 2018, the date on which the FSA was enacted.[10]  The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of

---

[6]   Doc. 11-1 at 7-8.
[7]   *Id*. at 7.
[8]   *Id*. at 16.
[9]   *Id*.
[10]   *See* 18 U.S.C. § 3632.

evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release.[11]  Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs."[12]

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or supervised release.[13]  An inmate may earn ten (10) or fifteen (15) days of credit for every thirty (30) days of successful participation.[14]  Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of time credit for every thirty (30) days of successful participation.[15]

---

[11]   *See id*. § 3632(a).
[12]   *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).
[13]   *See* 18 U.S.C. § 3632(d)(4)(A).
[14]   *See id*.
[15]   *See id*.

Section 3624(g) sets forth the process for how FSA time credits are applied to create an earlier release date for eligible prisoners. Section 3624(g) requires, for placement in prerelease custody, that the prisoner "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or has specific approval by the warden.[16] For early transfer to supervised release, § 3624(g) requires that the inmate "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner."[17] The clear language of 18 U.S.C. § 3624(g) precludes application of time credits until Camara has lowered his recidivism risk level.

If the inmate is unable to satisfy this requirement concerning his recidivism risk level, then he may petition the warden of the prison to be individually considered for placement in prelease custody or supervised release.[18] The warden, in turn, can approve the inmate's "petition to be transferred to prerelease custody or supervised release" upon concluding that: (1) the inmate "would not be a danger to society if transferred to prerelease custody or supervised release;" (2) the inmate "has made a good faith effort to lower [his] recidivism risk through participation in

---

[16]   18 U.S.C. § 3624(g)(1)(D)(i).
[17]   *Id*. § 3624(g)(1)(D)(ii).
[18]   *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II).

recidivism reduction programs or productive activities;" and (3) the inmate "is unlikely to recidivate[.]"[19]

Respondent submits the Declaration of Jennifer Knepper, BOP Supervisory Attorney, wherein she explains that inmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a low or minimum recidivism risk.[20]  Camara, however, is presently assessed with a high recidivism risk score.[21]  As such, he will not be eligible for application of FSA time credits until, among other requirements, his risk level is reduced to minimum or low.

Finally, to the extent that Petitioner contends that Respondent has unlawfully removed the warden's authority to individually approve application of earned time credits for inmates who have high or medium recidivism risk levels,[22] the Court finds Petitioner's argument unavailing.  While, as discussed above, Section 3624(g) of the FSA authorizes the warden (i.e., Respondent) to deem such inmates eligible for application of earned time credits, Petitioner has neither alleged, nor shown, that he petitioned the warden for this specific approval or that the warden

---

[19]  *See id.* § 3624(g)(1)(D)(i)(II)(aa)–(cc); *see also* 28 C.F.R. § 523.44(c)(2)(i)–(iii).
[20]  Doc. 11-1, at 3; *see also* 28 C.F.R. § 523.44).
[21]  *Id.*
[22]  Doc. 12 at 3.

denied a review of such petition.[23]  Thus, the Court must deny Camara's habeas petition.

## III.    CONCLUSION

For the reasons set forth above, the Court will deny Camara's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  An appropriate order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[23]  *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II)(aa)–(cc) (explaining that the warden of the prison can approve an inmate's "petition to be transferred to prerelease custody or supervised release" after the warden has determined that: (1) the inmate "would not be a danger to society if transferred to prerelease custody or supervised release;" (2) the inmate "has made a good faith effort to lower [his] recidivism risk through participation in recidivism reduction programs or productive activities;" and (3) the inmate "is unlikely to recidivate").